## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JACK LINDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) File No. _____ |
| | ) |
| CENTURY PARK | ) |
| ASSOCIATES, LLC, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |

## **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiff Jack Linder ("Plaintiff" or "Mr. Linder") submits the following Complaint for Damages and Equitable Relief against Defendant Century Park Associates, LLC ("Defendant" or "CPA"):

## **INTRODUCTION**

1.

This is an employment case arising from Defendant's discrimination against Mr. Linder based on his religion (Judaism), Defendant's failure and refusal to accommodate his sincerely held religious beliefs, and its retaliation against him for exercising his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII").

2.

Plaintiff asserts claims for failure to accommodate, discrimination, and retaliation under Title VII. He seeks back pay and lost economic benefits of his employment, reinstatement or front pay in lieu thereof, non-economic compensatory and punitive damages, reasonable attorneys' fees and costs, and declaratory and injunctive relief.

**JURISDICTION AND VENUE**

3.

Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), and 42 U.S.C. § 2000e-5(f)(3).

4.

The violations of Plaintiff's rights occurred in the Northern District of Georgia. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) and (c), as every act of which Plaintiff complains occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

**PARTIES**

5.

Plaintiff is a resident of Fulton County in the State of Georgia, and at all relevant times he was employed by CPA.

6.

At all relevant times, Plaintiff was an "employee" of CPA within the meaning of Title VII, 42 U.S.C. § 2000e(f).

7.

Defendant is a corporation that regularly transacts business in the State of Georgia.

8.

CPA may be served with process by service of process upon its registered agent Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

9.

Defendant is a covered "employer" under Title VII, 42 U.S.C. § 2000e(b), as it employs more than fifteen (15) people.

## ADMINISTRATIVE PROCEEDINGS

10.

Plaintiff timely filed a charge of discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC").

11.

Plaintiff incorporates by reference his charge of discrimination as if set forth

in its entirety herein.

12.

Plaintiff received a Notice of Right to Sue from the United States Department of Justice within the last (90) days and has complied with all other conditions precedent to the assertion of his claims under Title VII.

## **FACTS**

13.

Mr. Linder is Jewish and a follower of the religion of Judaism.

14.

CPA offers senior living, assisted living, and independent living services.

15.

CPA has two assisted living and independent living communities in Lawrenceville, Georgia, also known as Garden Plaza at Lawrenceville ("Garden Plaza") and The Bridge at Lawrenceville ("The Bridge").

16.

Mr. Linder began working for CPA's Garden Plaza location as the Sales and Marketing Director on August 1, 2019.

17.

In this role, Mr. Linder planned, managed, and oversaw events to promote CPA's independent and assisted living options at The Bridge and Garden Plaza.

18.

About three months into his employment, Mr. Linder received a positive performance review from his supervisor, Executive Director of Garden Plaza, Steve Iroff.

19.

Mr. Iroff told Mr. Linder that this review was "the best review [he'd] ever given to an employee."

20.

Mr. Linder also consistently received positive feedback from regional managers, including Regional Director of Operations Shaleen "Shay" Sorgen and Regional Director of Sales Bill Bathalon, on the innovative programs he created and brought to Garden Plaza and The Bridge.

21.

Throughout his employment, Mr. Linder never received negative feedback about his performance from anyone in CPA's management.

22.

However, almost immediately after Mr. Linder's employment began, he noticed that each workday included Christian prayers.

23.

CPA's corporate headquarters often initiated the Christian prayers at work over the phone.

24.

Specifically, upper management at The Bridge and Garden Plaza would call CPA's corporate headquarters, and they would lead the prayers.

25.

As the Sales and Marketing Director, Mr. Linder also attended management meetings.

26.

Management meetings occurred approximately three times per week.

27.

Management meetings began with Christian prayers, including giving thanks to Jesus Christ.

28.

Mr. Linder regularly observed Directors from The Bridge and Garden Plaza closing their eyes and bowing their heads during these prayers.

29.

Employees from CPA's regional corporate offices, such as the Regional Director of Operations and the Regional Director for Nursing Services, sometimes visited the campus and led prayers during their visits.

30.

CPA planned a conference, to which it invited its employees based in Cleveland, Tennessee, wherein Christian prayers were scheduled for the beginning, middle, and end of each day.

31.

Because he is a Jewish man, Mr. Linder felt uncomfortable participating in Christian prayers.

32.

Mr. Linder could not avoid the Christian prayers because they were integrated into important, and often spontaneously held meetings.

33.

Mr. Linder's discomfort became even more apparent after the COVID-19 pandemic started, as meetings had to occur more frequently given the elevated risk of COVID-19 spreading to elderly residents.

34.

In the fall of 2019, Mr. Linder told his supervisor, Steve Iroff, that CPA's Christian prayers made him uncomfortable and did not comport with his religious beliefs.

35.

Mr. Linder explained to Mr. Iroff that it was impossible for him to opt out of the prayers because they were virtually a job requirement, as they were integrated into nearly every meeting.

36.

Mr. Iroff said he would communicate Mr. Linder's concerns to CPA's regional management.

37.

In January or February 2020, Mr. Iroff confirmed to Mr. Linder that he had relayed Mr. Linder's concerns about Christian prayers in the workplace to Regional Director of Operations, Shay Sorgen.

38.

In late February or early March 2020, Ms. Sorgen met with Mr. Linder in person and addressed these concerns.

39.

Specifically, Ms. Sorgen confirmed that she was aware of Mr. Linder's discomfort regarding the Christian prayers.

40.

However, Ms. Sorgen explained that CPA is a "Christian organization."

41.

Ms. Sorgen made it clear that corporate-led Christian prayers in the workplace would not stop.

42.

The only remedy Ms. Sorgen offered to Mr. Linder was that he could arrive to meetings late to avoid the prayers.

43.

Mr. Linder explained that the remedy Ms. Sorgen suggested was inadequate because, many meetings occurred spontaneously, and there was no way for him to tell how long the prayer portion of a meeting would last.

44.

Ms. Sorgen said CPA would not otherwise accommodate Mr. Linder's request not to participate in prayers.

45.

After Mr. Linder engaged in protected activity, his supervisors, including Ms. Sorgen and Mr. Bathalon, retaliated against him, and slowly stripped away authority and job duties.

46.

After he complained about being forced to participate in Christian prayers and requested an accommodation to be allowed not to have to do so, Ms. Sorgen stopped having direct conversations with Mr. Linder.

47.

Before Mr. Linder complained about the Christian prayers and requested accommodation, they corresponded frequently, and Ms. Sorgen consistently lauded his work.

48.

After Mr. Linder complained about the Christian prayers and requested accommodation, Ms. Sorgen stopped assigning him tasks, instead assigning them to his two direct reports, both of whom are Christian.

49.

After Mr. Linder complained about the Christian prayers and requested accommodation, Mr. Bathalon stopped calling Mr. Linder or answering his calls.

50.

On April 18, 2020, CPA abruptly terminated Mr. Linder's employment.

51.

CPA claimed that Mr. Linder's job was being eliminated.

52.

However, CPA did not eliminate Mr. Linder's position.

53.

In response to Mr. Linder's EEOC Charge, CPA claimed for the first time that Mr. Linder's termination was performance-based and that he did not have a positive impact on improving occupancy.

54.

CPA's apparent failure to bring in new residents cannot be divorced from the fact that the company had a terrible reputation and an unwillingness to address the problems at the facilities Mr. Linder worked at, including citations from state regulators, a significantly older and dependent population than the company marketed, insect and rodent infestations, human waste stains on furniture, and at

least one death linked to kitchen staff that failed to adhere to a man's therapeutic diet (which was published in the Atlanta Journal-Constitution).

55.

In spite of all these deterrents for new residents, Mr. Linder was still able to increase occupancy at these facilities

56.

CPA also terminated Mr. Iroff, who is also Jewish and had communicated Mr. Linder's concern to CPA on Mr. Linder's behalf.

## COUNT I

**FAILURE TO ACCOMMODATE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq.***

57.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if set forth fully herein.

58.

Plaintiff's belief in Judaism and practice of that religion constitutes a bona fide religious belief that conflicted with Defendant's work requirement that he attend meetings with Christian prayers.

59.

Plaintiff informed Defendant of his bona fide religious belief, and he asked to be excluded from Christian prayers in the workplace.

60.

Defendant violated Plaintiff's right to a reasonable accommodation for his religious beliefs, practices, or observances under Title VII by, among other things, suggesting an inadequate accommodation, failing to offer any adequate alternatives, and terminating his employment rather than accommodating his request for a reasonable accommodation.

61.

The above-pled conduct by Defendant constitutes religious discrimination in violation of Title VII.

62.

Defendant acted in bad faith and in willful and wanton disregard for Plaintiff's federally protected rights.

63.

As a result of Defendant's discriminatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

64.

Pursuant to Title VII, Plaintiff is entitled to damages in an amount to be determined by the trier of fact, including back pay and lost benefits, front pay and/or reinstatement, non-economic compensatory damages, punitive damages, attorneys' fees and costs of litigation, and all other relief recoverable under Title VII and statutes providing for relief under Title VII.

## COUNT II

**RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq.***

65.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if set forth fully herein.

66.

Plaintiff is a member of a protected class because of his religion.

67.

Defendant discriminated against Plaintiff on the basis of his religion (Jewish) by, among other things, (1) denying his request that he be excluded from Christian prayers in the workplace following his complaints, including complaints to regional management, (2) regional management stating that CPA is a "Christian organization," (3) stopping direct conversations with Mr. Linder, (4) not calling Mr.

Linder or answering his calls, (5) reducing Mr. Linder's authority and responsibilities by reassigning tasks to his direct reports (Christian employees) that had been previously given to him, (6) cutting off his direct reports' reporting relationship with Mr. Linder, and (7) terminating his employment.

68.

Defendant acted in bad faith and in willful and wanton disregard for Plaintiff's federally protected rights.

69.

As a result of Defendant's discriminatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

70.

Pursuant to Title VII, Plaintiff is entitled to damages in amount to be determined by the trier of fact, including back pay and lost benefits, front pay and/or reinstatement, non-economic compensatory damages, punitive damages, attorneys' fees and costs of litigation, and all other relief recoverable under Title VII and statutes providing for relief under Title VII.

## COUNT III

## RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e *et seq.*

71.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if set forth fully herein.

72.

Plaintiff engaged in statutorily protected activity on several occasions, including, but not limited to, when he requested a reasonable accommodation for his bona fide religious beliefs and by complaining about and/or opposing practices made unlawful by Title VII.

73.

Defendant discriminated against Plaintiff on the basis of his religion (Jewish) by, among other things, (1) denying his request that he be excluded from Christian prayers in the workplace following his complaints, including complaints to regional management, (2) regional management stating that CPA is a "Christian organization," (3) stopping direct conversations with Mr. Linder, (4) not calling Mr. Linder or answering his calls, (5) reducing Mr. Linder's authority and responsibilities by reassigning tasks to his direct reports (Christian employees) that

had been previously given to him, (6) cutting off his direct reports reporting relationship with Mr. Linder, and (7) terminating his employment.

74.

The above-pled retaliatory conduct toward Plaintiff constitutes unlawful retaliation against Plaintiff in violation of Title VII.

75.

Defendant acted in bad faith and in willful and wanton disregard for Plaintiff's federally protected rights.

76.

As a result of Defendant's retaliatory conduct, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

77.

Pursuant to Title VII, Plaintiff is entitled to damages in amount to be determined by the trier of fact, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees and costs of litigation, and all other relief recoverable under Title VII and statutes providing for relief under Title VII.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A. That the Court take jurisdiction of this matter;

B. That process be served;

C. That the Court award Plaintiff his back pay and lost economic benefits of employment, including interest, in an amount to be determined at the trial of this case;

D. That the Court award non-economic compensatory damages in an amount to be determined by the trier of fact;

E. That the Court award Plaintiff punitive damages against Defendant in an amount to be determined by the trier of fact;

F. That the Court enter an order reinstating Plaintiff to his employment with Defendant, or if this is not practicable, award Plaintiff front pay damages in lieu thereof;

G. That the Court award Plaintiff his costs of litigation in this action and his reasonable attorneys' fees;

H. That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

I. That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 11th day of May, 2022.

/s/ *Rachel Berlin Benjamin*
Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@hallandlampros.com
Brian J. Sutherland
Georgia Bar No. 105408
brian@hallandlampros.com
HALL & LAMPROS LLP
400 Galleria Parkway Suite 1150
Atlanta, GA 30339
Tel: (404) 876-8100
Fax: (404) 876-3477

*Counsel for Plaintiff*